UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SEAN MICHAEL FITZGERALD,

      Defendant.

Case No. 1:16-cr-178

HON. ROBERT HOLMES BELL

_____/

**OPINION DENYING DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT**

On September 20, 2016, a grand jury charged Defendant Fitzgerald with operation of an air common carrier while under the influence of alcohol, in violation of 18 U.S.C. § 342. (ECF No. 3.)  On December 2, 2016, Defendant filed a motion to dismiss the indictment, arguing that the undisputed facts show that the charged offense cannot be proven as a matter of law.  (ECF Nos. 15, 16.)  The Government filed a response in opposition (ECF No. 20), as well as a notice of intent to use an expert witness (ECF No. 19).  Defendant has filed a reply.  (ECF No. 21.)

**I.**

The relevant facts are undisputed.  On August 25, 2016, Defendant arrived at Avflight in Traverse City, Michigan, to co-pilot a Talon Air flight to Massachusetts.  Avflight is a fixed-based operator that services charter planes in Traverse City, and Talon Air is an air

common carrier under 18 U.S.C. § 341. After arrival, Defendant began his pre-flight preparation of the airplane, including communicating with the airport tower to obtain the flight plan and clearances for the trip. Defendant also turned on the auxiliary power, inspected the outside of the aircraft, and brought coffee and luggage to the aircraft. Although Defendant had only completed 30% of the pre-flight preparations necessary for take off, the plane could have departed within 45 minutes. In addition, the three aircraft passengers had arrived and were awaiting departure.

During this time, the pilot, Manny Ramirez, smelled alcohol and noticed Defendant's eyes were bloodshot. Ramirez asked Defendant if he had been drinking, but Defendant denied it. Later, Ramirez called Talon Air to report that Defendant had been drinking. Talon Air contacted the Traverse City Police Department, and Sergeant Drzewiecki responded. Defendant failed a routine test for alcohol impairment, and denied recently consuming alcohol. Sergeant Drzewiecki also administered two preliminary breath tests, both of which showed an unusually high blood alcohol content of over .30 percent. Later tests confirmed that Defendant's blood alcohol content was .343 percent.

Later that day, Defendant was charged in state court with "attempt to act as a crew member of an aircraft" while having a blood alcohol content of .02 percent or greater, in violation of Mich. Comp. Laws § 259.185(2). Defendant was arraigned and released on bond. On September 6, 2016, the Government filed a federal complaint, and the state charge was dismissed without prejudice.

The criminal complaint continuation sets forth the facts to support a finding of

probable cause for Defendant's violation of § 342, including that Sergeant Drzewiecki found

Defendant sitting in the cockpit, wearing plane earphones and conducting pre-flight checks

of gauges.  (ECF No. 1-1, PageID.3.)  Further, the indictment provides that Defendant

"operated an air common carrier while under the influence of alcohol, specifically operating

as copilot a Talon Air managed Bombardier Challenger 604 aircraft with tail number

N604RR on the tarmac staging area of Cherry Capital Airport while possessing a blood

alcohol content of approximately 0.343 percent."  (ECF No. 3.)

## II.

Federal Rule of Criminal Procedure 7(c)(1) provides that "[t]he indictment or

information must be a plain, concise, and definite written statement of the essential facts

constituting the offense charged[.]"  The indictment "need not contain a formal introduction

or conclusion."  Fed. R. Cr. P. 7(c).  An indictment is sufficient if it contains the elements

of the offense charged, fairly informs a defendant of the charge against which he must

defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for

the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).  "The indictment must

be read as a whole, accepting the factual allegations as true, and construing those allegations

in a practical sense with all the necessary implications." *United States v. McAuliffe*, 490 F.3d

526, 531 (6th Cir. 2007) (citing *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996)

(en banc)).

Further, "'[a]n indictment will usually be sufficient if it states the offense using the

words of the statute itself, as long as the statute fully and unambiguously states all the

elements of the offense.'" *Id.* (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)). But the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged.'" *Id.* (quoting *Hamling*, 418 U.S. at 117-18).

Under Rule 12(b)(3), a motion to dismiss an indictment is appropriate if the undisputed facts establish that the offense charged cannot be proven as a matter of law. *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992); *see also United States v. Ali*, 557 F.3d 715, 719-20 (6th Cir. 2009) ("[Defendant's] motion to dismiss did not assert an innocence defense; rather, it requested dismissal of the indictment on the ground that, as a matter of law, the undisputed facts did not give rise to the offense charged in the indictment."). "[W]here the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the Court is reviewing a question of law, not fact." *United States v. Vertz*, 40 F. App'x 69, 70 (6th Cir. 2002). The Court "may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *Id.* at 467. But the Court is "not limited to the face of the indictment in ruling on the motion to dismiss since Rule 12 vest[s] the [C]ourt with authority 'to determine issues of fact in such a manner as the [C]ourt deems appropriate.'" *Id.* (quoting *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976)).

## III.

Whoever "operates or directs the operation of a common carrier while under the influence of alcohol or any controlled substance . . ." violates § 342. As such, the Government must prove the following beyond a reasonable doubt: Defendant (1) operated (2) a common carrier (3) while under the influence of alcohol. Defendant argues that the Government cannot prove that he operated the aircraft in violation of § 342. Defendant notes that § 342 does not define the term "operate" and that there are few cases interpreting this statute. Further, the limited case law interpreting § 342 is comprised of cases where the aircraft actually departed, unlike the facts here. *See United States v. Cope*, 676 F.3d 1219 (10th Cir. 2012); *United States v. Prouse*, 945 F.2d 1017 (8th Cir. 1991).

It is also important to note that there is no attempt provision in § 342. Therefore, Defendant must have actually operated or directed the operation of the aircraft. A substantial step towards operation may be sufficient for attempt; but here, it is not enough for a conviction under § 342. *See, e.g., United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000) (explaining that the requisite "substantial step" for an attempt conviction must be something more than mere preparation).

Defendant analogizes § 342 to the regulation against drunk driving in national parks, which prohibits "[o]perating or being in actual physical control of a motor vehicle" while being intoxicated. 26 C.F.R. § 4.23. Defendant cites *United States v. McFarland*, 445 F.3d 29, 32 (1st Cir. 2006), where the court distinguished "actual physical control" as something short of "operation." The court thus concluded that evidence that the defendant was asleep

and drunk behind the wheel of his parked truck was sufficient to establish that he was in actual physical control of the vehicle. *Id.* But § 342's language differs from this regulation; § 342 does not include actual physical control but simply prohibits anyone who "operates or directs the operation of a common carrier." 18 U.S.C. § 342. Therefore, *McFarland*'s distinction between actual physical control and operation is not helpful here.

Defendant also relies upon Michigan's Vehicle Code, which defines operate as "[b]eing in actual physical control of a vehicle" or "[c]ausing an automated motor vehicle to move under its own power in automatic mode upon a highway or street[.]" Mich. Comp. Laws § 257.35a(a). Several Michigan courts have interpreted this statute to affirm a conviction where the car was running but not in motion. *See, e.g., People v. Wood*, 538 N.W.2d 351 (Mich. 1995); *People v. Lechleitner*, 804 N.W.2d 345 (Mich. Ct. App. 2010). Or: where the car was not running but there was evidence to show that the defendant had driven the car earlier. *See, e.g., People v. Solomson*, 683 N.W.2d 761 (Mich. Ct. App. 2004); *People v. Schinella*, 407 N.W.2d 621 (Mich. Ct. App. 1987).

The Court must construe the term "operate" according to its plain and ordinary meaning. *See United States v. Edge*, 989 F.2d 871, 878 (6th Cir. 1993) ("[I]n the absence of legislative intent to the contrary, the plain and ordinary meaning of the statute controls."). The dictionary definition of operate is "[t]o run or control the functioning of." American Heritage Dictionary of the English Language 1233 (4th ed. 2000). Defendant also cites several statutory definitions of the term "operate." First, Title 49 defines the term "operate aircraft" as "using aircraft for the purposes of air navigation, including (a) the navigation of

6

aircraft; and (b) causing or authorizing the operation of aircraft with or without the right of legal control of the aircraft." 49 U.S.C. § 40102(a)(35). Further, the Code of Federal Regulations provides that "[o]perate, with respect to aircraft, means use, cause to use or authorize to use aircraft, for the purpose . . . of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise)." 14 C.F.R. § 1.1. In addition, the Michigan statute that Defendant was initially charged under explains that "'operat[ing] aircraft' means use of aircraft for purpose of air navigation, including navigation or piloting of aircraft." Mich. Comp. Laws § 259.6(e).

In addition, the Government cites a decision by the Florida District Court of Appeals, *Hughes v. State*, 943 So.2d 176 (Fla. Dist. Ct. App. July 12, 2006), to support its argument that Defendant's pre-flight actions amounted to operation. In *Hughes*, the pilot and co-pilot of a commercial aircraft were convicted of violating a Florida statute that prohibits the operation of an aircraft "in the air or on the ground or water" while intoxicated or in a careless or reckless manner. Fla. Stat. Ann. § 860.13 (2010). Approximately forty minutes before departure, defendants passed through airport security. *Hughes*, 943 So.2d at 182. The security personnel smelled alcohol and asked if one of the defendants had been drinking, but the defendant denied that he had. *Id.* The security personnel reported this observation, and airport police officers responded. *Id.* at 182-83. When the officers arrived, the defendants were in the cockpit, the jet way had been pulled back, and the aircraft was connected to the tug that pushes it out from the gate. *Id.* The court concluded that this evidence was sufficient to prove that both defendants operated the aircraft in violation of the Florida statute. *Id.* at

196 ("The undisputed evidence was that the defendants, acting as pilot and copilot of this commercial aircraft with over 100 passengers onboard, while sitting in the cockpit of the aircraft and thus in actual physical control of the aircraft, performed extensive preflight duties for the purpose of flying the aircraft.").

In *Hughes*, an expert witness testified that operating the aircraft includes properly checking the operational systems, imputing the flight plan, performing the flow and systems checks, obtaining permission to fly by calling the air traffic controller on an assigned frequency, and obtaining clearance information, among other pre-flight duties. *Id.* The expert further testified that "each of the many required and vital tasks the pilot and copilot must perform before the aircraft can move, is operating the aircraft[.]" *Id.* Here, the Government indicates that it intends to offer the same expert witness as in *Hughes*, who will testify that Defendant operated the aircraft given the actions Defendant took prior to his arrest.

To determine whether the indictment is legally sufficient, the Court must accept as true all of the factual allegations in the indictment. *McAuliffe*, 490 F.3d at 531. The indictment provides that Defendant "specifically operat[ed] as copilot a Talon Air managed Bombardier Challenger 604 aircraft . . . on the tarmac staging area of Cherry Capital Airport while possessing a blood alcohol content of approximately 0.343 percent." (ECF No. 3.) The indictment contains the elements of the charged offense, fairly informs Defendant of the charges against him, and enables Defendant to plead an acquittal or conviction. The Court may also rely on other pleadings, including the criminal complaint continuation, to determine

whether there are legally-sufficient facts to support a finding of guilt.  The criminal complaint continuation details several of the steps taken by Defendant in preparation for departure, including "utilizing the avionics of the airplane," "communicat[ing] with the airport on a recorded transmission to obtain the flight plan for the trip," and "conducting pre-flight checks of gauges" from the cockpit.  (ECF No. 1-1, PageID.3.)

It is undisputed that Defendant engaged in pre-flight duties as a co-pilot; and he did so with the purpose of running or controlling the function of the aircraft.  Defendant has not shown that the undisputed evidence shows that the Government is incapable of proving the elements beyond a reasonable doubt.  *See Levin*, 973 F.2d at 469.  Thus, dismissal is not proper.  *Id.*

An order will enter in accordance with this opinion.


Dated: <u>January 9, 2017</u>                                          <u>/s/ Robert Holmes Bell</u>
                                                                               ROBERT HOLMES BELL
                                                                               UNITED STATES DISTRICT JUDGE