UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

SEAN MICHAEL FITZGERALD,

       Defendant.
_____/

CASE NO. 1:16-CR-178

HON. ROBERT J. JONKER

## OPINION

### A. BACKGROUND

Defendant Fitzgerald is a licensed commercial pilot, charged with operating a common carrier while intoxicated in violation of 18 U.S.C. § 342. In particular, the government says that Defendant was found in the cockpit of the commercial airplane that he was scheduled to co-pilot with a blood alcohol content of .343 percent. The parties agree that the aircraft engines were not running and that no passengers had boarded, but the government says that Defendant was still operating the aircraft because he was performing mandatory pre-flight checks of the equipment and otherwise taking action with the purpose and effect of actually co-piloting the flight.

The Court earlier denied Defendant's motion to dismiss the indictment and held that operation of a common carrier is broad enough to encompass the kind of activity the government says occurred, at least provided that appropriate expert testimony establishes Defendant's activities are really necessarily performed as part of his operational co-pilot responsibilities. This still leaves the question, however, of how to instruct the jury on what counts as operation of a common carrier

and what does not. The Court convened a hearing to address the issue with the parties. There is no standard instruction that the Court or the parties have found. There is no statutory definition of the term "operates or directs the operation of a common carrier." And there is no case law that construes the meaning of the statutory phrase.

To frame the discussion, the Court presented the parties with proposed language that attempted to define the term in functional and spatial terms. In particular, the Court proposed that the term cover (1) all actions taken by a pilot in his capacity as such; but (2) only if the actions were taken while on board the aircraft. The Court's effort was to define a zone of the pilot's total compensated activity that fairly encompassed genuinely operational conduct—things intended to affect the actual functioning of the plane—from merely administrative or other preliminary or postliminary work that has no proximate connection to aircraft functioning.

Defining the line between genuine operational activity, and merely preliminary or postliminary administrative activity should take into account the typical set of activities a commercial pilot undertakes while on the job, and provide meaningful guidance for the jury in drawing the line in disputed cases. Obviously, manipulating control inputs while the aircraft is actually moving in flight or on the ground counts as operation. But passive monitoring of oil pressure, altimeter, radio traffic and the myriad of other cockpit indicators while the plane is flying should also count as operation even if the pilot is not actively manipulating control inputs. The Court's proposed instruction takes that into account and treats both kinds of activities as operation of the common carrier.

But how far should operation extend before the plane starts and after the plane stops moving on any given flight? Studying weather reports in the pilot lounge—though important to safe

travel—may simply amount to necessary preparation for flight, but fall short of actual operational activity. The necessary external visual inspections of the aircraft are also surely essential to safe flight, and may be connected to flight operation because a failure to discover some physical interference with an aileron could surely affect the aircraft in flight. And yet external airplane checks like reviewing weather reports in the pilot's lounge, lack a direct connection to operational control of the aircraft. For framing the issue initially, the Court selected a line favorable to Defendant by requiring the operational activity to occur while on board the aircraft, thus necessarily excluding both external aircraft checks and pilot lounge activity.

But once a commercial pilot steps on board the aircraft and into the cockpit, it is hard to characterize any activity undertaken as a pilot as merely administrative. The pilot is now in the physical location where he or she can access all of the aircraft controls. The required pre-flight checks involve physically testing and checking the controls that will be used in flight—radio, rudder pedals, circuit breakers, autopilot and fuel gauges to name a few. Some of what the pilot does may actually directly control the function of the aircraft, such as inputting flight-plan parameters that will engage when the autopilot feature takes over in flight. The Court's proposed language takes these situations into account by holding a commercial pilot accountable under the statute based on any activity undertaken as a pilot while on board the aircraft he or she is assigned to pilot, whether before, during or after flight.

### B. PARTIES' RESPONSE

The Court invited the parties to respond to the proposed jury instruction and to propose their own language. The government suggested the requirement of "on board" activity was too restrictive, but that it would accept the definition in this case. Defendant objected that the Court's proposal was

too broad and proposed that operation be limited to activity after passengers boarded or after the engines are started. The Court is not persuaded by Defendant's proposal, but believes some minor changes to the Court's proposal are appropriate to address the comments of the government. The Court is also submitting a proposed alternative instruction for the parties' consideration.

**1. Defense Arguments**

Defendant argues that, in light of the scope of the Anti-Drug Abuse Act and amendments to § 342, the plain meaning of the term "operate" is ambiguous and the term's legislative history does not provide any insight as to its meaning. Thus, Defendant explains that the Court must apply the rule of lenity. *See United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013). Defendant proposes that the phrase "'operates or directs the operation' of a common carrier begins with either (1) the boarding of the passengers on the common carrier or (2) the starting of the engines of the common carrier." (Def.'s Mem., ECF No. 35, PageID.92.) Defendant argues that this language aligns with the purpose of §§ 341-343 and principles of statutory construction. Defendant contends that this language creates a bright line, grounded in the words and intent of the statute, and appropriately carves out all preliminary flight activities. According to Defendant, if Congress had meant to cover preliminary flight activities, it would have criminalized not merely operation of a common carrier, but attempted operation as well.

The Court is not persuaded by Defendant's argument. The statute's use of the term "operate" is not so ambiguous as to invoke the rule of lenity. The following well-established principles guide the Court's construction of the statutory phrase:

> The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear. However, this court also looks to the language and design of the statute as a whole in interpreting the plain

>meaning of statutory language. Finally, we may look to the legislative history of a statute if the statutory language is unclear. If the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants.

*Miller*, 734 F.3d at 540 (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)). In its statutory context of "operat[ing] or direct[ing] the operation of a common carrier," the standard tools of construction are adequate to the task.

The statute does not define the term "operate," and so the Court must construe "it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). The dictionary definition of operate is "[t]o run or control the functioning of." American Heritage Dictionary of the English Language 1233 (4th ed. 2000). This definition provides a natural starting point in "phraseology that strikes the ear as 'both reasonable and normal[.]'" *Watson v. United States*, 552 U.S. 74, 79 (2007) (quoting *Smith*, 508 U.S. at 230). But context is also important. Here, the context is "operat[ing] or direct[ing] the operation of a common carrier." So the term must, in this case, account for running or controlling the function of not just any vehicle, but one engaged in commercial transportation of paying customers with licensed professionals in control of the trip.

Just because the meaning of a term like "operate" needs construction does not mean that it is hopelessly ambiguous. The United States Supreme Court has demonstrated this with the very same word, albeit in a different context. In *United States v. Bestfoods*, 524 U.S. 51, 66 (1998), the Supreme Court analyzed the meaning of "operator" in the context of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), which defined the term as "any person . . . operating" the facility. The Court did its best to give the term its "'ordinary or natural meaning.'" *Id.* (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)). The Court noted

the dictionary definition of the term "operate," and looked to the term's definition in the organizational sense, as obviously intended by the CERCLA. The Supreme Court then relied on the Act's evident purpose to "sharpen [its] definition" of operator. *Id.* at 66-67.

As in *Bestfoods*, the general meaning of the term "operate" "sharpen[s]" when considering the context. In *Bestfoods*, the "CERCLA's concern with environmental contamination" sharpened the focus. Here, Congress' concern with passenger safety in common carriers naturally sharpens the focus and leads the Court to focus attention on operational decisions a pilot makes in his capacity as such. In the Court's view, that necessarily encompasses more than the activities that follow the arbitrary lines that Defendant proposes of activating the engines or passenger boarding. In particular, it must include, at a minimum, any actions the pilot takes as a pilot while on board the airplane, including required pre-flight checks, auto-pilot inputs, and the like. This is because in the context of a common carrier, a professional pilot's operational activity begins before the motor starts or the first passenger boards. Indeed, part of the professional pilot's operational responsibilities are to ensure that the aircraft is safe for boarding and start up.

The defense proposal suggests that the Court should look to Michigan law's treatment of what it means to operate a motor vehicle under the influence of alcohol. The Court is not persuaded. First, the state legislature and the federal Congress are obviously different lawmakers, and there is no reason to think that they intend to accomplish the same thing in their respective statutes. Second and most important, the context that "sharpen[s]" the meaning of the term "operate" is sufficiently different. Congress is focusing on common carriers with the special intent of protecting paying passengers. The state law is focused simply on private operation of a private vehicle. People use their private vehicles for purposes in addition to simple transportation, such as sleeping overnight

in a rest area or parking lot. That context naturally affects the scope and application of the term. Common carriers, in contrast, serve only one purpose: transport of paying customers.

### 2. Government's Response

The more difficult question from the Court's perspective is whether its proposed language is too limiting to the extent it covers only "on board" activity. As already noted, exterior checks of the aircraft certainly have the capacity to directly uncover physical impediments to safe flight control. And even review of weather reports in a pilot's lounge and decision-making associated with it, can have direct operational impact. Moreover, in today's world we know that it is possible to control a drone aircraft from a completely remote location, so controlling the aircraft does not necessarily require being physically on board. Considerations like these may lead to the need for a different instruction in a different case. However, the government is willing to acquiesce in a more limiting instruction in this case, and the Court is satisfied that a slightly modified version of its original proposal is sufficient for this case.

## C. UPDATED COURT PROPOSAL

### 1. Modifications to Original Proposal

The Court remains convinced that anything a pilot does while on board the airplane in his or her capacity as a pilot is fairly within the scope of operation, but recognizes that some additional activity may also qualify. The Court will amend its original language slightly to account for this:

> 1. The government charges defendant with operating a common carrier under the influence of alcohol, a violation of 18 U.S.C. § 342.
>
> 2. To find defendant guilty as charged, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

      A)  First, that defendant operated or directed the operation of a common carrier; and

      B) Second, that defendant was under the influence of alcohol at the time.

3.  I will now provide you some additional guidance on the meaning of some of these terms:

      A)  A "common carrier" includes an aircraft that is authorized to transport passengers for hire.

      B)  An individual is presumed "under the influence of alcohol" if his blood alcohol content is .10 percent or more.

      C) The term "operate" generally means "to run or control the functioning of" something.  For a licensed commercial pilot of an aircraft, the phrase "operates or directs the operation of a common carrier" includes any action taken or directed in his capacity as a licensed commercial pilot while actually on board the aircraft.

This language provides guidance to the jury, and a meaningful, functional line for each side to address and argue from whatever proofs are presented.  It does not artificially tie liability to any particular event, such as passenger boarding or starting the engines, but rather focuses on a functional test of operation in the unique context of a commercial common carrier.   It is focused on the fact pattern of this case, but also recognizes the government's point about an overly limiting instruction.

**2. Alternative Proposal**

In light of the comments of both parties, the Court offers an alternative instruction that encourages the jury to draw lines between operational activity on the one hand; and clerical or administrative activity, on the other hand.  The Court believes the language would leave the jury in a place similar to where it would be with the modified original instruction.  But this alternative does avoid potential over inclusion (like checking and recording a Hobbs meter reading in the cockpit post

flight); and potential under inclusion (like external aircraft checks) with the original instruction. It also focuses the jury on whether the evidence points toward direct and proximate connection with flight operations or functions, which corresponds to the generic definition of operation.

Here is the proposed alternate language:

The term "operate" generally means "to run or control the functioning of" something. This phrase does not cover every activity a pilot takes in the course of preparing for flight or closing out a flight. Purely administrative or clerical activities like clocking in for work, reviewing a passenger manifest, signing papers to acknowledge receipt of fuel and an obligation to pay for it, or documenting a Hobbs meter reading post flight, by themselves, do not amount to operation of a common carrier because the activities are not directly and proximately linked to functional or operational flight control. They are simply necessary administrative or clerical tasks.

On the other hand, the phrase does cover more than direct manipulation of a flight yoke, rudder pedal, ignition switch or other flight control input. Doing these things, or directing someone else to do them, are certainly included as operation of a common carrier. But for a commercial pilot the term is not limited to direct manipulation of a flight controls.

For a commercial pilot, this term includes anything the pilot does or directs in his capacity as a pilot before, during or after flight, but only if the evidence convinces you beyond a reasonable doubt that the activity or direction was part of the operational or functional requirements for the flight, and not simply some administrative or clerical task associated with it.

## CONCLUSION

The Court is giving the parties the benefit of its present intention as the Final Pretrial Conference approaches. Of course, the parties are free to address this issue and raise further arguments at the Final Pretrial Conference and at any other time before the final charge to the jury.

Dated:     March 22, 2017             /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE